IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON N. A.,[1]           )
                          )
        Plaintiff,        )
                          )
vs.                       )  Case No. 18-cv-02182-DGW[2]
                          )
COMMISSIONER of SOCIAL    )
SECURITY,                 )
                          )
        Defendant.        )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for both DIB and SSI in April 2015, alleging disability as of June 13, 2001. After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied both applications on November 22, 2017. (Tr. 14-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 10, 18.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ did not adhere to SSR 96-8p when he ignored and misstated evidence in his conclusion.

2. The ALJ did not adhere to SSR 16-3p when he failed properly assess plaintiff's subjective allegations in determining plaintiff's credibility.

## Applicable Legal Standards

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in

significant numbers in the national economy. *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity

since the alleged onset date. The ALJ found that plaintiff had severe impairments of multilevel degenerative disc disease of spine status/post L4-5 surgical fusion; degenerative arthritis of the ankles, bilateral; bipolar disorder; attention deficit hyperactivity disorder; hypertension; gastroesophageal reflux disease (GERD); and seizure disorder.

The ALJ found that plaintiff had the RFC to perform work at the sedentary exertional level, limited to no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional stooping, crouching, crawling, and kneeling; and no exposure to excessive vibration, unprotected heights, and hazardous machinery. The ALJ stated that plaintiff must be allowed to sit or stand alternatively, if he is not off task more than 10% of his scheduled work period. In addition, the ALJ wrote that plaintiff can remember, understand, and carry out only simple, routine instructions and tasks consistent with SVP levels 1 and 2 type jobs. Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff did not have any past relevant work, but he was able to do jobs at the sedentary exertional level which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1974 and was 26 years old on the alleged onset date.

His reported height was 5'9" and his reported weight was 190 pounds. (Tr. 63). He was incarcerated from March 2014 to June 2015 for possession of methamphetamine manufacturing material. (Tr. 182, 215). Before plaintiff was incarcerated, he received DIB for a broken back. (Tr. 117). Plaintiff submitted a function report stating that he was in pain and had trouble using the bathroom, dressing himself, and getting around. (Tr. 205, 206, 208, 210). He reported that he was unable to do any household chores and needed help getting to doctor's appointments. (Tr. 207, 209). He claimed that although he shopped, he made trips as short as possible. (Tr. 209). In the section of the form reserved for remarks, plaintiff wrote, "I Jason Armbruster need help I was Incarcerated for 14 months and I need to get back to my life! I really need this money I am not just fucking around! I worked hard all my Life please help me!!" Plaintiff continued, "I am sorry for what I said but it is the truth. I have worked hard but I understand there is a lot of people that worked harder than me!" (Tr. 212).

2. **Evidentiary Hearing**

Plaintiff said that he had completed the 11th grade and was currently attending school for his GED. (Tr. 34, 38-39). He stated he last worked in 2000, and subsequently received disability until his incarceration. (Tr. 34-35). He reported that during the day, he would try clean house. Plaintiff claimed he walked his dog twice a day, but could only tolerate ten minutes of walking before needing to sit down. He also could not sit for more than 10 minutes, so he changed from standing to sitting throughout the day. (Tr. 39). He said that his significant other prepared most of his meals. (Tr. 39-40).

Plaintiff said that he woke up intermittently throughout the night because of pain. (Tr. 41). He stated that only took over the counter medication for his pain, but had prescription medication on hand if it was bad. (Tr. 37-38). He further stated he was on medication for a seizure disorder. (Tr. 35). He indicated that he had not tried alternative treatments like hot showers or ice, although he was trying to set up physical therapy. (Tr. 41). Plaintiff claimed that he could hardly put any weight on his right ankle and could not drive a car because he could not push the pedals to brake or accelerate. (Tr. 42). He reported that he had a hard time walking and limped everywhere. (Tr. 43). He said he sometimes had a hard time getting in the shower and his significant other sometimes helped him shower because he was concerned about slipping. (Tr. 45).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

Plaintiff worked for a moving company and suffered a work-related accident while moving furniture in 2001, resulting in chronic lower back pain with radiculopathy. Plaintiff then went through several surgeries, including an L4-L5 spinal fusion, with continued pain.

Plaintiff saw Dr. Raymond Leung in September 2015 for a consultative exam. According to the record, plaintiff had a history of a fracture of the back. (Tr. 483). Dr. Leung noted that plaintiff went to physical therapy and occasionally used a cane prescribed by a doctor, which he did not bring to the appointment. (Tr. 481-482). Plaintiff reported taking over the counter medication for pain, which did not help.

(Tr. 481). Dr. Leung observed that plaintiff could lift a maximum of 5 pounds; could walk a block, albeit with a mild limp; heel walk; and squat; but could not hop, tandem walk, or toe walk. (Tr. 481, 483). Dr. Leung further stated that plaintiff had a reduced range of motion in his ankles and lumbar spine. (Tr. 483). An x-ray of plaintiff's lumbar spine that month revealed laminectomy defects at L4, loss of height of the disc at L4-L5, minor curvature to the right, minor spurring, and sclerotic change involving the anterior aspect of the superior endplate of L4. (Tr. 480).

In November 2015, an MRI of plaintiff's lumbar spine showed L1 modic type-1 changes involving the superior endplate of L4; instrumented posterior spinal fusion of the L4-L5 with L4 laminectomy changes; and mild L2-L3 and moderate L3-L4 canal stenosis. (Tr. 709). An x-ray of his left ankle revealed internal fixation of a healed distal left fibular fracture, with a fractured screw and a screw separated from the lateral plate. (Tr. 711-12)

In December 2015, plaintiff visited the Barnes-Jewish Hospital ("Barnes") emergency room and complained of back and ankle pain. (Tr. 644). During this visit, an orthopedic physician consulted on plaintiff's condition. Plaintiff claimed his pain was worse in the morning and he was stiff after long periods of inactivity, though he improved with anti-inflammatories. (Tr. 651). X-rays were ordered. An x-ray of plaintiff's left ankle showed lateral fixation plate and multiple transverse fixation screws along the distal left fibula. A single transverse internal fixation screw crossing the syndesmosis was fractured, but unchanged compared to prior examination. There was atherosclerotic calcification of the arteries of the left

lower extremity, minimal widening of the lateral malleolus, and heterotopic ossification adjacent to the medial malleolus. An x-ray of his right ankle revealed a large rounded lytic focus within the talar dome which may have represented a geode or secondary osteoarthritis of the tibiotalar joint; joint space narrowing of the tibiotalar joint and mild offset of the talus with respect to the tibial plafond; and atherosclerotic calcifications at the arteries of the right lower extremity. (Tr. 653). Plaintiff was diagnosed with osteoarthritis and discharged with a 5-day prescription for oxycodone and naproxen. (Tr. 652, 682).

In February 2016, plaintiff visited Barnes and complained of lower back pain. (Tr. 642). An x-ray of his lumbar spine showed unchanged posterior decompression and instrumented fusion of L4-5 with no motion of the fused segments. (Tr. 699). Later that month, plaintiff received a lumbosacral nerve root block and reported a reduction of symptoms. (Tr. 695-696).

In May 2016, plaintiff returned to Barnes for a health risk screening and follow-up for possible surgery. According to the record, during the visit, plaintiff reported not having difficulty walking, bathing, grooming, cooking, cleaning, shopping, or driving. (Tr. 640). CT scans revealed postsurgical changes of the posterior decompression and instrumented fusion at L4-5; and multilevel degenerative changes, most severe at L3-4, with moderate-to-severe central canal stenosis and moderate right neuroforaminal stenosis. (Tr. 691-694).

In September 2016, plaintiff visited the Gateway Regional Medical Center emergency room after having a single isolated seizure. Plaintiff reported that he was taking the anti-seizure medication Dilantin while in prison, but discontinued it

on his own. (Tr. 635). He was discharged the same day with instructions to resume his Dilantin and follow-up with his doctor. (Tr. 634).

An August 2017 CT scan of plaintiff's lumbar spine showed postoperative changes of diskectomy and posterior spinal fusion at L4-5; degenerative disk disease and facet arthropathy with significant neural foraminal stenosis on the right at L3-L4; moderate central canal stenosis at L2-L3 and L3-L4; and likely congenital narrowing of the lumbar spinal canal. (Tr. 717). September 21, 2017 CT of the his lumbar spine revealed congenital narrowing of the cervical spinal canal with superimposed spondylosis and facet arthropathy causing moderate central canal stenosis at L2-L3 and L3-L4; degenerative disk disease and facet arthropathy with significant neural foraminal stenosis bilaterally at L2-L3 and on the right at L3-L4; and postoperative changes of L4-L5 partial diskectomy, posterior spinal fusion, and L4 laminectomy. (Tr. 716).

4. **State Agency Consultants' RFC Assessments**

In September 2015, acting as a state agency consultant, Megan O'Neal, assessed plaintiff's RFC based on a review of the file materials. In addition to citing Dr. Leung's findings the additional explanation section, O'Neal opined that plaintiff could lift 20 pounds occasionally; ten pounds frequently; stand, sit, and walk for six hours; occasionally climb ramps and stairs; balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, or scaffolds. (Tr. 58-59). She found that plaintiff was not disabled and could perform light work. (Tr. 60). In November 2015, acting as a state agency consultant, Lenore Gonzalez, MD, assessed plaintiff's RFC based on a review of the file materials and largely agreed

with O'Neal's findings.  (Tr. 78-81).

## Analysis

Plaintiff argues that the ALJ ignored evidence in his RFC findings that would undermine his conclusion.  In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3).  While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings.  *Ibid.*  (citing *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski,* 245 F.3d at 888).  Otherwise, it is impossible for a reviewing court to make an informed review.  *Golembiewski,* 322 F.3d at 917 (citing *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir. 2000)).

Plaintiff's argument prevails.  First, the ALJ ignored entire lines of evidence in his decision.  Out of the dozen-plus imaging results contained in the medical records for this case, the ALJ only found it necessary to mention one, a set of x-rays of plaintiff's ankles and feet from December 2015.  (Tr. 21).

Second, the ALJ made blanket claims about medical findings in his decision that are inaccurate.  In his decision, the ALJ stated that, "[t]he claimant nonetheless walks without a cane and has demonstrated normal gait, sensation, reflexes and motor strength and tone."  (Tr. 21).  This claim is, at best, deceptive. Part of the deception is exposed one paragraph down when the ALJ discloses that plaintiff's "gait has been described as steady and normal aside from a mild limp," leaving one to wonder how someone could have a mild limp and still be classified as

having a normal gate? The conflicts continue with the ALJ's definitive assertion that plaintiff walks without a cane. While it is true that plaintiff could, and did, ambulate without a cane, Dr. Leung noted that plaintiff occasionally used a cane prescribed by a doctor.

Third, the ALJ made another blanket claim, asserting that plaintiff "takes only over-the-counter medication for his alleged pain . . . ." (Tr. 22). This claim is incorrect. Plaintiff was prescribed oxycodone on at least once occasion, at the end of a stay in the emergency room. He also stated in his testimony at the hearing that he had prescription medication on hand if the pain worsened.

Looked at singularly, these pieces of evidence may not be fatal. However, when the evidence is looked at together, a pattern does emerge. It appears that the ALJ left some evidence out that corroborated plaintiff's claims to increase the plausibility of his conclusion. This Circuit has rejected that approach. See, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Additionally, while it is appropriate for the ALJ to consider daily activities when evaluating credibility, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The Seventh Circuit has called improper consideration of daily activities "a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014). The ALJ here misconstrued information and made attenuated connections between plaintiff's activities and his exertion level in

an apparent attempt to dismiss the bulk of plaintiff's subjective symptom allegations.

Specifically, the ALJ stated that plaintiff "reports the ability to shop in stores, use public transportation and get along with authority figures great. . . ." (Tr. 19). Continuing, the ALJ observed, he "reports activities that include walking the dog daily, helping clean house and going to the grocery store." (Tr. 22). However, plaintiff stated in his function report that he was unable to help with household chores and, although he shopped, he made trips to the store as short as possible. He further stated in testimony that he could not take the dog outside for more than 10 minutes before the pain required him to sit down.

The lack of evidentiary support in this case requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42

U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** **September 3, 2019.**

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**